CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division

CYNTHIA JOHNSON (CABN 328932)
Special Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Cynthia.Johnson@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| SEBASTIAN CHAVARRIAGA ROJAS, et al., | CASE NO. 25-CV-08172-PCP |
| Plaintiff, | **RESPONDENTS' OPPOSITION TO PRELIMINARY INJUNCTION MOTION** |
| v. | Date: October 7, 2025<br>Time: 1:00 pm<br>Location: Courtroom 8<br>San Jose courthouse |
| SERGIO ALBARRAN, et al., | Judge: Hon. P. Casey Pitts |

1

## TABLE OF CONTENTS

2   I.   INTRODUCTION ..................................................................................................... 1

3   II.  STATUTORY BACKGROUND ............................................................................... 1

4        A.   "Applicants for Admission" Under 8 U.S.C. § 1225 ...................................... 1

5        B.   Detention Under 8 U.S.C. § 1225 .................................................................. 2

6             1.   Section 1225(b)(1) ............................................................................. 2

7             2.   Section 1225(b)(2) ............................................................................. 4

8        C.   Detention Under 8 U.S.C. § 1226(a) .............................................................. 5

9   III. BACKGROUND ....................................................................................................... 7

10       A.   Factual Background ......................................................................................... 7

11       B.   Procedural Background .................................................................................. 10

12  IV.  ARGUMENT .......................................................................................................... 10

13       A.   Legal Standard ............................................................................................... 10

14       B.   Petitioners Cannot Show a Likelihood of Success on the Merits ................... 11

15            1.   Under the Plain Text of 8 U.S.C. § 1225, Petitioners Must Be Detained
                  Pending the Outcome of Their Removal Proceeding ............................ 11

16

17            2.   A Narrow Interpretation of "Seeking Admission" Runs Counter to
                  Congress's Use of the Phrase "Or Otherwise" in § 1225(a)(3) ........... 14

18            3.   "Seeking Admission" Is Not Limited to Aliens Who Take Action
                  Toward Admission ............................................................................. 16

19

20            4.   To Apply § 1225(b)(2) Narrowly to "Arriving Aliens" Runs Counter
                  to Congress's Specific Use of "Arriving Aliens" Elsewhere in § 122 .............. 17

21            5.   The INA's Implementing Regulations Are Contrary to the Court's
                  Narrow View That § 1225(b)(2) Applies Only to Arriving Aliens ....................... 18

22

23            6.   The *Mathews* Factors Do Not Apply .......................................................... 18

24            7.   Congress Did Not Intend to Treat Individuals Who Unlawfully Enter
                  the Country Better than Those Who Appear at a Port of Entry ...................... 20

25            8.   Petitioners' Detention Authority Cannot Be Converted to § 1226(a) ................. 20

26            9.   Petitioners Are Not Entitled to a Pre-Detention Hearing Under
                  § 1226(a) ........................................................................................... 22

27

28            10.  Petitioners Cannot Obtain an Injunction Prohibiting Transfer ........................ 22

1    C.    Petitioners Cannot Establish Irreparable Harm ................................................. 23

2    D.    The Balance of Equities and Public Interest Do Not Favor an Injunction ...................... 23

3    E.    Any Court Order Should Not Reverse the Burden of Proof............................................ 24

4  V.    CONCLUSION ......................................................................................................... 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## Cases

3

*Abel v. United States,*
4      362 U.S. 217 (1960) ................................................................................................ 22

5

*Acord v. California,*
6      No. 17-cv-01089, 2017 WL 4699835 (E.D. Cal. Oct. 19, 2017) ........................... 10

7

*Al Otro Lado v. Executive Office for Immigration Review,*
         138 F.4th 1102 (2025) ..................................................................................... 14, 16
8

*All. for Wild Rockies v. Cottrell,*
9      632 F.3d 1127 (9th Cir. 2011) ............................................................................... 23

10

*American Immigration Lawyers Ass'n v. Reno,*
11      199 F.3d 1352 (D.C. Cir. 2000) ............................................................................... 3

12

*Angov v. Lynch,*
         788 F.3d 893 (9th Cir. 2015) .................................................................................. 17
13

*Begay v. United States,*
14      553 U.S. 137 (2008) ................................................................................................ 15

15

*BFP v. Resolution Trust Corp.,*
16      511 U.S. 531 (1994) ................................................................................................ 17

17

*Biden v. Texas,*
18      597 U.S. 785 (2022) .................................................................................................. 5

19

*Buriev v. Warden, Geo, Broward Transitional Ctr.,*
         No. 25-cv-60459, 2025 WL 1906626 (S.D. Fla. Mar. 18, 2025) ........................... 10
20

*Carlson v. Landon,*
21      342 U.S. 524 (1952) .......................................................................................... 22, 23

22

*Dave v. Ashcroft,*
23      363 F.3d 649 (7th Cir. 2004) .................................................................................. 19

24

*Demore v. Kim,*
25      538 U.S. 510 (2003) .......................................................................................... 19, 23

26

*Dep't of Homeland Sec. v. Thuraissigiam,*
         591 U.S. 103 (2020) ....................................................................................... passim
27

28

RESPONDENTS' OPPOSITION TO PI MOTION
3:25-CV-06920-JD

*Drakes Bay Oyster Co. v. Jewell,*
   747 F.3d 1073 (9th Cir. 2014) ................................................................................. 23

*Fischer v. United States,*
   603 U.S. 480 (2024) ............................................................................................. 15

*Florida v. United States,*
   660 F. Supp. 3d 1239 (N.D. Fla. 2023) ................................................................... 7

*Garcia v. Google, Inc.,*
   786 F.3d 733 (9th Cir. 2015) ................................................................................. 11

*Gen. Contractors of Cal., Inc. v. Coal for Econ. Equity,*
   950 F.2d 1401 (9th Cir. 1991) ............................................................................... 23

*Hernandez Nieves v. Kaiser,*
   No. 25-CV-06921-LB, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025) .................... 12

*In re Griffith,*
   206 F.3d 1389 (11th Cir. 2000) ............................................................................. 17

*In re Guerra,*
   24 I. & N. Dec. 37 (BIA 2006) ......................................................................... 5, 24

*Jennings v. Rodriguez,*
   583 U.S. 281 (2018) ..................................................................................... passim

*Johnson v. Arteaga-Martinez,*
   596 U.S. 573 (2022) ............................................................................................. 25

*Karczewski v. DCH Mission Valley LLC,*
   862 F.3d 1006 (9th Cir. 2017) ............................................................................... 13

*Kingdomware Technologies, Inc. v. United States,*
   579 U.S. 162 (2016) ............................................................................................... 6

*Kleber v. CareFusion Corp.,*
   914 F.3d 480 (7th Cir. 2019) ................................................................................. 14

*Kucana v. Holder,*
   558 U.S. 233 (2010) ............................................................................................... 2

*Lands Council v. McNair,*
   537 F.3d 981 (9th Cir. 2008) ................................................................................. 23

*Loper Bright Enters. v. Raimondo,*
   603 U.S. 369 (2024) ......................................................................................... 6, 12

*Lopez Reyes v. Bonnar*,
   No 18-cv-07429-SK, 2018 WL 7474861 (N.D. Cal. Dec. 24, 2018) ................................. 23

*Lopez v. Brewer*,
   680 F.3d 1068 (9th Cir. 2012) ...................................................................................... 10

*Ma v. Barber*,
   357 U.S. 185 (1958) ..................................................................................................... 19

*Make the Road New York, et al., v. Noem*, et al.,
   No. 25-cv-190 (JMC), 2025 WL 2494908 (D.D.C. Aug. 29, 2025) ................................. 3

*Marin All. For Med. Marijuana v. Holder*,
   866 F. Supp. 2d 1142 (N.D. Cal. 2011) ......................................................................... 23

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009) ........................................................................................ 11

*Maryland v. King*,
   567 U.S. 1301 (2012) ................................................................................................... 24

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ..................................................................................................... 19

*Matter of E-R-M- & L-R-M-*,
   25 I & N Dec. 520 (BIA 2011) ....................................................................................... 4

*Matter of Lemus*,
   25 I & N Dec. 734 (BIA 2012) .................................................................................. 2, 16

*Matter of Lemus-Losa*,
   25 I&N n.6 (BIA 2012) ............................................................................................ 16, 17

*Matter of Q. Li*,
   29 I. & N. Dec. 66 (BIA 2025) ............................................................................. 5, 6, 12

*Matter of Yajure Hurtado*,
   29 I&N Dec. 216 (BIA 2025) ...............................................................................6, 12, 17

*Matter of Yajure Hurtado*,
   I&N Dec. .................................................................................................................... 13

*Mendez v. ICE*
   23-cv-00829-TLT, 2023 WL 2604585 (N.D. Cal. Mar. 15, 2023)..................................... 11

*Meneses v. Jennings*,
   No. 21-cv-07193-JD, 2021 WL 4804293 (N.D. Cal. Oct. 14, 2021)................................. 23

*Milan-Rodriguez v. Sessions*,
    No. 16-cv-01578-AWI, 2018 WL 400317 (E.D. Cal. Jan. 12, 2018) ................................ 22

*Morrisey v. Brewer*,
    408 U.S. 471 (1972) ......................................................................................................... 19

*Niz-Chavez v. Garland*,
    593 U.S. 155 (2021) ........................................................................................................... 7

*Nken v. Holder*,
    556 U.S. 418 (2009) ......................................................................................................... 23

*Noem v. Vasquez Perdomo*,
    606 U.S. —, 2025 WL 2585637 (2025) .......................................................................... 23

*Ogbolumani v. U.S. Citizenship & Immigr. Servs.*,
    523 F. Supp. 2d 864 (N.D. Ill. 2007) .............................................................................. 16

*Ortega-Cervantes v. Gonzales*,
    501 F.3d 1111 (9th Cir. 2007) ....................................................................................... 5, 6

*Patrick's Payroll Servs., Inc. v. Comm'r of Internal Revenue*,
    848 F. App'x 181 (6th Cir. 2021) .................................................................................... 14

*Pena v. Hyde*,
    No. CV 25-11983-NMG, 2025 WL 2108913 (D. Mass. July 28, 2025).................... 18, 19, 21

*Preminger v. Principi*,
    422 F.3d 815 (9th Cir. 2005) .......................................................................................... 24

*Ramirez Clavijo v. Kaiser*,
    No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025) ...................... 12, 21

*Reno v. Flores*,
    507 U.S. 292 (1993) ................................................................................................... 22, 23

*Rios-Berrios v. INS*,
    776 F.2d 859 (9th Cir. 1985) .......................................................................................... 22

*Rodriguez Diaz v. Garland*,
    53 F.4th 1189 (9th Cir. 2022) .................................................................................. passim

*Rubinstein v. United States*,
    No. 23-cv-12685, 2024 WL 37931 (E.D. Mich. Jan. 3, 2024) ........................................ 10

*Salcedo Aceros v. Kaiser*,
    No. 25-CV-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025)....................... passim

*Senate of Cal. v. Mosbacher*,
 968 F.2d 974 (9th Cir. 1992) ............................................................................ 11

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
 739 F.2d 1415 (9th Cir. 1984) .......................................................................... 11

*Singh v. Holder*,
 638 F.3d 1196 (9th Cir. 2011) .......................................................................... 25

*Stanley v. Univ. of S. Cal.*,
 13 F.3d 1313 (9th Cir. 1994) ............................................................................ 11

*Stormans, Inc. v. Selecky*,
 586 F.3d 1109 (9th Cir. 2009) .......................................................................... 24

*Suzlon Energy Ltd. v. Microsoft Corp.*,
 671 F.3d 726 (9th Cir. 2011) ............................................................................ 20

*Torres v. Barr*,
 976 F.3d 918 (9th Cir. 2020) ............................................................................ 20

*Ubiquity Press v. Baran*,
 No 8:20-cv-01809-JLS-DFM, 2020 WL 8172983 (C.D. Cal. Dec. 20, 2020) .................. 24

*United Gas Improvement v. Callery*,
 382 U.S. 223 (1965) ........................................................................................ 20

*United States v. Arango*,
 09-178 TUC DCB, 2015 WL 11120855 (D. Ariz. Jan. 7, 2015) .............................. 24

*Villarreal v. R.J. Reynolds Tobacco Co.*,
 839 F.3d 958 (11th Cir. 2016) ..................................................................... 14, 15

*Washington v. Chimei Innolux Corp.*,
 659 F.3d 842 (9th Cir. 2011) ............................................................................ 20

*Weinberger v. Romero-Barcelo*,
 456 U.S. 305 (1982) ........................................................................................ 24

*Winter v. NRDC*,
 555 U.S. 7 (2008) ............................................................................................ 10

*Wong Wing v. United States*,
 163 U.S. 228 (1896) ........................................................................................ 22

*Zadvydas v. Davis*,
 533 U.S. 678 (2001) ........................................................................................ 19

1

**Statutes**

2　8 U.S.C. § 1101(a)(13)(ii) ................................................................................................ 16

3　8 U.S.C. § 1158(a)(1) ...................................................................................................... 16

4　8 U.S.C. § 1182(a)(6)(C) .................................................................................................. 3

5　8 U.S.C. § 1182(a)(7) ........................................................................................................ 3

6

7　8 U.S.C. § 1182(a)(9)(A) ................................................................................................ 17

8　8 U.S.C. § 1182(a)(9)(B) ................................................................................................ 17

9　8 U.S.C. § 1182(d)(5)(A) .................................................................................................. 5

10　8 U.S.C. § 1225 ........................................................................................................ passim

11　8 U.S.C. § 1225(a)(1) ................................................................................................... 1, 2

12

13　8 U.S.C. § 1225(b) .................................................................................................... passim

14　8 U.S.C. § 1225(b)(2) ................................................................................................ passim

15　8 U.S.C. § 1225(b)(2)(A) ............................................................................................. 5, 13

16　8 U.S.C. § 1226 .................................................................................................................. 5

17　8 U.S.C. § 1226(a) ..................................................................................................... passim

18　8 U.S.C. § 1229a ..................................................................................................... 2, 4, 6, 14

19　8 U.S.C. § 1252(e)(2) ...................................................................................................... 13

20　8 U.S.C. § 1252(f)(1) ....................................................................................................... 10

21

22　8 U.S.C. § 1558(a)(2)(B) ................................................................................................... 4

**Regulations**

23

24　8 C.F.R. § 208.30 .............................................................................................................. 4

25　8 C.F.R. § 208.30(d)(4) ..................................................................................................... 4

26　8 C.F.R. § 208.30(f) ...................................................................................................... 4, 14

27　8 C.F.R. § 235.3 ............................................................................................................... 18

28

8 C.F.R. § 235.3(b)(1)(i) ........................................................................................................ 18

8 C.F.R. § 235.3(b)(1)(ii) ....................................................................................................... 18

8 C.F.R. § 235.3(b)(3) .............................................................................................................. 5

8 C.F.R. § 235.3(b)(4) .............................................................................................................. 4

8 C.F.R. § 235.3(c)(1) ............................................................................................................. 18

8 C.F.R. § 236.1(c)(8) .............................................................................................................. 5

8 C.F.R. § 236.1(d)(1) .............................................................................................................. 5

8 C.F.R. § 1003.42(d) ............................................................................................................... 4

8 C.F.R. § 1003.42(f) ................................................................................................................ 4

8 C.F.R. § 1236.1(d)(1) ............................................................................................................ 5

69 Fed. Reg. 48877-01 .............................................................................................................. 3

90 Fed. Reg. 8139 (Jan. 24, 2025) ........................................................................................... 3

1      **I.      INTRODUCTION**

2              Petitioners have moved for a preliminary injunction ("PI") enjoining the government from re-detaining

3      them absent a pre-detention hearing before a neutral decision maker. But under the applicable immigration

4      statutes, Petitioners are "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b).

5      *See* 8 U.S.C. § 1225(a)(1); 8 U.S.C. § 1182(a)(6)(A)(i) (categorizing certain classes of aliens as inadmissible,

6      and therefore ineligible to be admitted to the United States, including those "present in the United States

7      without being admitted or paroled"); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138-140 (2020)

8      (an alien who is neither admitted nor paroled, nor otherwise lawfully present in this country, remains an

9      "applicant for admission" who is "on the threshold" of initial entry, even if released into the country "for

10     years pending removal," and continues to be "'treated' for due process purposes 'as if stopped at the border'");

11     *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (such aliens are "treated as 'an applicant for admission'").

12              These "applicants for admission," which include aliens present without being admitted or paroled

13     ("PWAP")—as is the circumstance with each of the Petitioners in this case, "fall into one of two categories,

14     those covered by § 1225(b)(1) and those covered by § 1225(b)(2)," both of which are subject to mandatory

15     detention. *Jennings*, 583 U.S. at 287 ("[R]ead most naturally, §§ 1225(b)(1) and (b)(2) mandate detention

16     for applicants for admission until certain proceedings have concluded."). They are not entitled to custody

17     redetermination hearings, whether pre- or post-detention. *Jennings*, 583 U.S. at 297 ("[N]either § 1225(b)(1)

18     nor § 1225(b)(2) says anything whatsoever about bond hearings."). Petitioners thus cannot show a likelihood

19     of success on his claim that they are entitled to a custody redetermination hearing prior to re-detention.

20              Nor could Petitioners show a likelihood of success on their claims even if they were subject to 8

21     U.S.C. § 1226(a) instead of the mandatory detention framework of § 1225(b). Section 1226(a) does not

22     provide for *pre*-detention immigration judge review but instead sets out a procedure for review of

23     detention by a U.S. Immigration and Customs Enforcement ("ICE") officer once an alien is in custody—a

24     process that the Ninth Circuit has found ensures "that the risk of erroneous deprivation would be

25     'relatively small.'" *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196–97 (9th Cir. 2022).

26     **II.     STATUTORY BACKGROUND**

27              **A.      "Applicants for Admission" Under 8 U.S.C. § 1225**

28

The Immigration and Nationality Act ("INA") deems an "applicant for admission" to be an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1); *Thuraissigiam*, 591 U.S. at 140 ("an alien who tries to enter the country illegally is treated as an 'applicant for admission'") (citing 8 U.S.C. § 1225(a)(1)); *Matter of Lemus*, 25 I & N Dec. 734, 743 (BIA 2012) ("Congress has defined the concept of an 'applicant for admission' in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission[.]"). However long they have been in this country, an alien who is present in the United States but has not been admitted "is treated as 'an applicant for admission.'" *Jennings*, 583 U.S. at 287. Thus, for example, an "applicant for admission" includes certain classes of aliens that are inadmissible and therefore ineligible to be admitted to the United States under Section 212(a) of the INA, since those aliens are "present in the United States without being admitted or paroled[.]" 8 U.S.C. § 1182(a)(6)(A)(i).

## B.      Detention Under 8 U.S.C. § 1225

Applicants for admission, including those like Petitioners who are PWAP, may be removed from the United States by expedited removal under § 1225(b)(1), or full removal proceedings before an immigration judge under 8 U.S.C. § 1229a, pursuant to § 1225(b)(2). All applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)," both of which are subject to mandatory detention. *Jennings*, 583 U.S. at 287 ("[R]ead most naturally, §§ 1225(b)(1) and (b)(2) mandate detention for applicants for admission until certain proceedings have concluded.").

### 1.      Section 1225(b)(1)

Congress established the expedited removal process in § 1225(b)(1) to ensure that the Executive could "expedite removal of aliens lacking a legal basis to remain in the United States." *Kucana v. Holder*, 558 U.S. 233, 249 (2010); *see also Thuraissigiam*, 591 U.S. at 106 ("[Congress] crafted a system for weeding out patently meritless claims and expeditiously removing the aliens making such claims from the country."). This provision authorizes immigration officers to order certain inadmissible aliens "removed from the United States without further hearing or review." Section 1225(b)(1) applies to "arriving aliens" and "certain other" aliens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid

documentation." *Id.*; 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii). Section 1225(b)(1) also allows for the expedited removal of any alien "described in" § 1225(b)(1)(A)(iii)(II), as designated by the Attorney General ("AG") or Secretary of Homeland Security—that is, any alien not "admitted or paroled into the United States" and "physically present" fewer than two years—who is inadmissible under § 1182(a)(7) at the time of "inspection." *See* 8 U.S.C. § 1182(a)(7) (categorizing as inadmissible aliens without valid entry documents). Whether that happens at a port of entry or after illegal entry is not relevant; what matters is whether, when an officer inspects an alien for admission under § 1225(a)(3), that alien lacks entry documents and so is subject to §1182(a)(7). The AG's or Secretary's authority to "designate" classes of aliens as subject to expedited removal is subject to his or her "sole and unreviewable discretion." 8 U.S.C. § 1225(b)(1)(A)(iii); *American Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000) (upholding expedited removal statute).

On five occasions, the Secretary (and earlier, the AG) has designated categories of aliens for expedited removal under § 1225(b)(1)(A)(iii). In 2004, citing "the interests of focusing enforcement resources upon unlawful entries that have a close spatial and temporal nexus to the border," the Secretary designated for expedited removal those "aliens encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border." *Designating Aliens for Expedited Removal*, 69 Fed. Reg. 48877-01, 48879 (Aug. 11, 2004). More recently, the Secretary restored the expedited removal scope to "the fullest extent authorized by Congress." *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025). The current notice enables DHS "to exercise the full scope of its statutory authority to place in expedited removal, with limited exceptions, aliens determined to be inadmissible under [8 U.S.C. § 1182(a)(6)(C) or (a)(7)] who have not been admitted or paroled into the United States and who have not affirmatively shown, to the satisfaction of an immigration officer, that they have been physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility," who were not otherwise covered by prior designations. *Id.* at 8139–40.[1]

Expedited removal proceedings under § 1225(b)(1) include additional procedures if an alien

---

[1] On August 29, 2025, a district court in the District of Columbia stayed the government's implementation and enforcement of this 2025 notice. *Make the Road New York, et al., v. Noem*, et al., No. 25-cv-190 (JMC), 2025 WL 2494908 (D.D.C. Aug. 29, 2025), *appeal docketed*, No. 25-5320 (D.C. Cir. Sept. 5, 2025). The government's position is that *Make the Road* was wrongly decided, and appealed that decision. *Id.* at ECF No. 66. The government's emergency motion is now pending with the D.C. Circuit.

RESPONDENTS' OPPOSITION TO PI MOTION
3:25-CV-06920-JD

3

indicates an intention to apply for asylum[2] or expresses a fear of persecution, torture, or return to the alien's country. *See* 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 235.3(b)(4). In that situation, the alien is given a non-adversarial interview with an asylum officer, who determines whether the alien has a "credible fear of persecution" or torture. *Id.* §§ 1225(b)(1)(A)(ii), (b)(1)(B)(iii)(II), (b)(1)(B)(iv), (v); *see also* 8 C.F.R. § 208.30; *Thuraissigiam*, 591 U.S. at 109–11 (describing the credible fear process). The alien may also pursue *de novo* review of that determination by an immigration judge ("IJ"). 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. §§ 1003.42(d), 1208.30(g). During the credible fear process, an alien may consult with an attorney or representative and engage an interpreter. 8 C.F.R. § 208.30(d)(4), (5). However, an alien subject to these procedures "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

If the asylum officer or IJ does not find a credible fear, the alien is "removed from the United States without further hearing or review." 8 U.S.C. §§ 1225(b)(1)(B)(iii)(I), (b)(1)(C); 1252(a)(2)(A)(iii), (e)(2); 8 C.F.R. §§ 1003.42(f), 1208.30(g)(2)(iv)(A). If the asylum officer or IJ finds a credible fear, the alien is generally placed in full removal proceedings under 8 U.S.C. § 1229a, but remains subject to mandatory detention. *See* 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

Expedited removal under § 1225(b)(1) is a statutory procedure distinct from § 1229a. Section 1229a governs full removal proceedings initiated by a notice to appear and conducted before an IJ, during which the alien may apply for relief or protection. By contrast, expedited removal under § 1225(b)(1) applies in narrower, statutorily defined circumstances—typically to individuals apprehended at or near the border who lack valid entry documents or commit fraud upon entry—and allows for their removal without a hearing, subject to limited exceptions. For these aliens, DHS has discretion to pursue expedited removal under § 1225(b)(1) or § 1229a. *Matter of E-R-M- & L-R-M-*, 25 I & N Dec. 520, 524 (BIA 2011).

### 2.    Section 1225(b)(2)

Section 1225(b)(2) is "broader" and "serves as a catchall provision." *Jennings*, 583 U.S. at 287. It "applies to all applicants for admission not covered by § 1225(b)(1)." *Id.* Under Section 1225(b)(2), an alien

---

[2] Aliens must apply for asylum within one year of arriving in the United States, 8 U.S.C. § 1558(a)(2)(B), except if the alien can demonstrate "extraordinary circumstances" that justify moving that deadline. *Id.* § 1558(a)(2)(D).

1   "who is an applicant for admission" is subject to mandatory detention pending full removal proceedings "if

2   the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a

3   doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (requiring that such aliens "be detained for a

4   proceeding under section 1229a of this title"); *Matter of Q. Li*, 29 I. & N. Dec. 66, 68 (BIA 2025)

5   (proceedings under section 1229a are "full removal proceedings under section 240 of the INA"); *see also Id.*

6   ("[F]or aliens arriving in and seeking admission into the United States who are placed directly in full removal

7   proceedings, [] 8 U.S.C. § 1225(b)(2)(A)[] mandates detention 'until removal proceedings have

8   concluded.'") (citing *Jennings*, 583 U.S. at 299); 8 C.F.R. § 235.3(b)(3) (an alien placed into § 1229a

9   removal proceedings in lieu of expedited removal proceedings under § 1225(b)(1) "shall be detained"

10  pursuant to § 1225(b)(2)). DHS has the sole discretionary authority to temporarily release on parole "any

11  alien applying for admission to the United States" on a "case-by-case basis for urgent humanitarian reasons

12  or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also Biden v. Texas*, 597 U.S. 785, 806 (2022).

13          **C.      Detention Under 8 U.S.C. § 1226(a)**

14          A different statutory detention authority, 8 U.S.C. § 1226, applies to aliens who have been lawfully

15  admitted into the U.S. but are deportable and subject to removal proceedings. Section 1226(a) provides for

16  the arrest and detention of these aliens "pending a decision on whether the alien is to be removed from the

17  United States." 8 U.S.C. § 1226(a). Under § 1226(a), DHS may, in its discretion, detain an alien during his

18  removal proceedings, release him on bond, or release him on conditional parole.[3] By regulation,

19  immigration officers can release an alien if he demonstrates that he "would not pose a danger to property

20  or persons" and "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). An alien can also

21  request a custody redetermination (*i.e.*, a bond hearing) by an IJ at any time before a final order of removal

22  is issued. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1), 1003.19. At a custody

23  redetermination, the IJ may continue detention or release the alien on bond or conditional parole. 8 U.S.C.

24  § 1226(a); 8 C.F.R. § 1236.1(d)(1). IJs have broad discretion in deciding whether to release an alien on

25  bond.  *In re Guerra*, 24 I. & N. Dec. 37, 39–40 (BIA 2006) (listing nine factors for IJs to consider).

26
27          [3] Being "conditionally paroled under the authority of § 1226(a)" is distinct from being "paroled into the United States
    under the authority of § 1182(d)(5)(A)." *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007) (holding that because
    release on "conditional parole" under § 1226(a) is not a parole, the alien was not eligible for adjustment of status under § 1255(a)).
28

1    Until recently, the government interpreted § 1226(a) to be an available detention authority for

2    aliens PWAP placed directly in full removal proceedings under § 1229a. *See, e.g.*, *Ortega-Cervantes*, 501

3    F.3d at 1116. In view of legal developments, the government has determined that this interpretation was

4    incorrect.  But prior agency practice applying § 1226(a) to Petitioners does not control because the plain

5    language of the statue, and not prior practice, controls. *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225-

6    26 (BIA 2025); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 408, 431-32 (2024)

7    (explaining that "the basic nature and meaning of a statute does not change . . . just because the agency

8    has happened to offer its interpretation through the sort of procedures necessary to obtain deference" and

9    finding that the weight given to agency interpretations "must always "depend upon the[ir] thoroughly

10    ..., the validity of [their] reasoning, [their] consistency with earlier and later pronouncements, and all

11    those factors which give [them] power to persuade '"). Section 1225 is the sole applicable immigration

12    detention authority for *all* applicants for admission. *See Jennings*, 583 U.S. at 297 ("Read most naturally,

13    §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have

14    concluded."). In *Jennings*, the Supreme Court explained that 8 U.S.C. § 1225(b) applies to all applicants

15    for admission, noting that the language of 8 U.S.C. § 1225(b)(2) is "quite clear" and "unequivocally

16    mandate[s]" detention. 583 U.S. at 300, 303 (explaining that "the word 'shall' usually connotes a

17    requirement" (quoting *Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 171 (2016))).

18    Similarly, the Attorney General, in *Matter of M-S-*, unequivocally recognized that 8 U.S.C. §§ 1225 and

19    1226(a) do not overlap but describe "different classes of aliens." 27 I&N Dec. at 516. The Attorney

20    General also held—in an analogous context—that aliens present without admission and placed into

21    expedited removal proceedings are detained under 8 U.S.C. § 1225 even if later placed in 8 U.S.C. §

22    1229a removal proceedings. 27 I&N Dec. at 518-19. In *Matter of Q. Li*, the Board of Immigration

23    Appeals (BIA) held that an alien who illegally crossed into the United States between ports of entry and

24    was apprehended without a warrant while arriving is detained under 8 U.S.C. § 1225(b). 29 I&N Dec. at

25    71. The BIA recently resolved the question of whether an alien PWAP released from DHS custody

26    pursuant to INA § 236(a) is an applicant for admission detained under INA § 235(b)(2)(A) in the

27    affirmative. *Matter of Yajure Hurtado*, 29 I&N Dec. 216.

28

This ongoing evolution of the law makes clear that all applicants for admission are subject to detention under 8 U.S.C. § 1225(b). *Cf. Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021) (providing that "no amount of policy-talk can overcome a plain statutory command"); *see generally Florida v. United States*, 660 F. Supp. 3d 1239, 1275 (N.D. Fla. 2023) (explaining that "the 1996 expansion of § 1225(b) to include illegal border crossers would make little sense if DHS retained discretion to apply § 1226(a) and release illegal border crossers whenever the agency saw fit").[4] *Florida's* conclusion "that § 1225(b)'s 'shall be detained' means what it says and . . . is a mandatory requirement . . . flows directly from *Jennings*." *Florida*, 660 F. Supp. 3d at 1273.

## III.    BACKGROUND

### A.    Factual Background

Within the last two years all four Petitioners entered the United States of America without inspection, admission or parole, and thus are presumptively subject to expedited removal under 8 U.S.C. § 1225(b)(1).

*Sebastian Chavarriaga Rojas*

On or about March 4, 2024, petitioner—a native and citizen of Colombia—entered the U.S. without inspection, admission or parole; Border Patrol ("BP") encountered him outside of designated ports of entry within 100 miles of the border at or near San Ysidro, California. Declaration of Jesse Cruz ("Cruz Decl."), Exhs. 1, 2. BP agents determined that he had unlawfully entered the U.S., then apprehended and transported him to a nearby BP facility for processing. *Id*. He lacked any valid immigration documents that would allow him to legally enter, pass through, or remain in the U.S.; he admitted to entering without presenting himself to an immigration officer for inspection at a designated port of entry *Id*.

Petitioner was "processed as NTA/OR due to lack of bed space." Exh. 1 at p. 2 (Disposition). He was served an arrest warrant (Form I-220A), *Id.*; a Notice to Appear (Form I-862) finding him inadmissible as a noncitizen "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the [AG]," *Id.*, Exh. 2; a Notice of Custody Determination (Form I-286), Exh. 1 at p. 2; and an Order of Release on Recognizance pending his removal

---

[4] Though not binding, the U.S. District Court for the Northern District of Florida's decision is instructive here. *Florida* held that 8 U.S.C. § 1225(b) mandates detention of applicants for admission throughout removal proceedings, rejecting the assertion that DHS has discretion to choose to detain an applicant for admission under either 8 U.S.C. §§ 1225(b) or 1226(a). 660 F. Supp. 3d at 1275. The court held that such discretion "would render mandatory detention under 8 U.S.C. § 1225(b) meaningless." *Id.*

proceedings to commence on May 1, 2025. *Id.* at p. 3, Exh. 2. On May 1, 2025, Petitioner appeared for his first master calendar hearing and case was continued to September 25, 2025. Exh. 1 at p. 4, Cruz Decl. ¶¶ 9-11.

On September 25, 2025, Petitioner appeared for a second master calendar hearing in immigration court. *Id.* DHS counsel moved to dismiss removal proceedings to initiate expedited removal, but the IJ continued the hearing to give Petitioner time to respond to the motion to dismiss. *Id.* After the hearing, ICE Enforcement and Removal Operations ("ERO") officers took him into custody. *Id.*

### *Maria Camila Velasquez Gomez*

On or about March 4, 2024, petitioner—a native and citizen of Colombia—entered the U.S. without inspection, admission or parole; BP encountered her outside of designated ports of entry within 100 miles of the border at or near San Ysidro, California. Declaration of Douglas Plummer ("Plummer Decl."), Exhs. 3, 4. BP agents determined that she had unlawfully entered the U.S., then apprehended and transported her to a nearby BP facility for processing. *Id.* She lacked any valid immigration documents that would allow her to legally enter, pass through, or remain in the U.S.; she admitted to entering without presenting herself to an immigration officer for inspection at a designated port of entry *Id.*

Petitioner was "processed as NTA/OR due to lack of bed space." Exh. 3 at p. 3 (Disposition). She was served an arrest warrant (Form I-220A), *Id.*; a Notice to Appear (Form I-862) finding her inadmissible as a noncitizen "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the [AG]," *Id.*, Exh. 4; a Notice of Custody Determination (Form I-286), Exh. 3 at p. 3; and an Order of Release on Recognizance pending her removal proceedings to commence on November 13, 2026. *Id.*, Exh. 4. On February 21, 2025, Petitioner requested consolidation with Rojas and her NTA was reset to May 1, 2025. *See* Exh. 4a, 4b. On May 1, 2025, she appeared for her first master calendar hearing and case was continued to September 25, 2025. *Id.*, Exh. 4 at p. 4, Plummer Decl. ¶¶ 9-11.

On September 25, 2025, Petitioner appeared for her second master calendar hearing in immigration court. *Id.* DHS counsel moved to dismiss removal proceedings to initiate expedited removal, but the IJ continued the hearing to give the Petitioner time to respond to the motion to dismiss. *Id.* After the hearing, ICE ERO officers took her into custody. *Id.*

### *Leon Felipe Hernandez Leal*

On or about December 13, 2023, petitioner—a native and citizen of Colombia—entered the U.S.

1    without inspection, admission or parole; Border Patrol encountered him outside of designated ports of entry

2    within 100 miles of the border at or near San Ysidro, California. Plummer Decl., Exhs. 5, 6. BP agents

3    determined that he had unlawfully entered the U.S., then apprehended and transported him to a nearby BP

4    facility for processing. *Id*. He lacked any valid immigration documents that would allow him to legally enter,

5    pass through, or remain in the U.S.; he admitted to entering without presenting himself to an immigration

6    officer for inspection at a designated port of entry *Id*.

7         Petitioner was processed as NTA/OR. Exh. 5 at p. 2 (Disposition). He was served an arrest warrant

8    (Form I-220A), *Id.* ; a Notice to Appear (Form I-862) finding him inadmissible as a noncitizen "present in

9    the United States without being admitted or paroled, or who arrived in the United States at any time or place

10   other than as designated by the [AG]," *Id.,* Exh. 6; a Notice of Custody Determination (Form I-286), Exh. 5

11   at p. 2; and an Order of Release on Recognizance pending his removal proceedings to commence on

12   September 25, 2025, *Id.*, Exh. 6. On September 25, 2025, Petitioner appeared for his first master calendar

13   hearing. Exh. 5 at p. 3, Plummer Decl. ¶¶ 17-18. At the hearing DHS counsel moved to dismiss removal

14   proceedings to initiate expedited removal, but the IJ continued hearing to give Petitioner time to respond to

15   the motion to dismiss. *Id.* After the hearing, ICE ERO officers took him into custody. *Id.*

16         <u>*Julian Carvajal Mendoza*</u>

17         On or about December 13, 2023, petitioner—a native and citizen of Colombia—entered the U.S.

18   without inspection, admission or parole; Border Patrol encountered him outside of designated ports of entry

19   within 100 miles of the border at or near San Ysidro, California. Plummer Decl., Exhs. 7, 8. BP agents

20   determined that he had unlawfully entered the U.S., then apprehended and transported him to a nearby BP

21   facility for processing. *Id*. He lacked any valid immigration documents that would allow him to legally enter,

22   pass through, or remain in the U.S.; he admitted to entering without presenting himself to an immigration

23   officer for inspection at a designated port of entry *Id*.

24         Petitioner was processed as NTA/OR. Exh. 7 at p. 2 (Disposition). He was served an arrest warrant

25   (Form I-220A), *Id.* ; a Notice to Appear (Form I-862) finding him inadmissible as a noncitizen "present in

26   the United States without being admitted or paroled, or who arrived in the United States at any time or place

27   other than as designated by the [AG]," *Id.,* Exh. 8; a Notice of Custody Determination (Form I-286), Exh. 7

28

1  at p. 2; and an Order of Release on Recognizance pending his removal proceedings to commence on

2  September 25, 2025, *Id.*, Exh. 8. On September 25, 2025, Petitioner appeared for his first master calendar

3  hearing. Exh. 7 at p. 4, Plummer Decl. ¶¶ 24-25. At the hearing DHS counsel moved to dismiss removal

4  proceedings to initiate expedited removal, but the IJ continued the hearing to give Petitioner time to respond

5  to the motion to dismiss. *Id.* After the hearing, ICE ERO officers took him into custody. *Id.*

6  **B.    Procedural Background**

7  On September 25, 2025, Petitioners filed a habeas petition. ECF No. 1.[5] On September 25, 2025,

8  they moved *ex parte* for a TRO. ECF Nos. 2, 4. The same day, the duty judge issued a TRO requiring

9  immediate release and enjoining re-detention without a pre-deprivation hearing. ECF No. 6 at 6-7. The TRO

10  was to remain in effect until 5:00 p.m. on October 9, 2025. The government filed a status report on

11  September 26, 2025, confirming that Petitioners were released from ICE custody at approximately 7:10 p.m.

12  Pacific Daylight Time on Thursday, September 25, 2025. ECF No. 8.

13  **IV.    ARGUMENT**

14  **A.    Legal Standard**

15  A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted

16  unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068,

17  1072 (9th Cir. 2012). To obtain relief, the moving party must show that "he is likely to succeed on the merits,

18  that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips

19  in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

20  The purpose of a preliminary injunction is to preserve the status quo pending final judgment rather

---

[5] The Petition joins four separate petitioners with separate sets of underlying factual circumstances in a single habeas petition. *See* Pet. ¶¶ 9-12. *See* Dkt. 1. Petitioners do not cite any authority for bringing a group petition with multiple petitioners, and Respondents are unaware of any authority that would permit joinder of separate petitioners. *Cf. Acord v. California*, No. 17-cv-01089, 2017 WL 4699835, at *1 (E.D. Cal. Oct. 19, 2017) ("There is no authority for permitting multiple petitioners to file a single habeas petition under 28 U.S.C. § 2254, and doing so generally is not permitted."). Indeed, this request for relief for multiple individual aliens would appear to contravene the prohibition contained in 8 U.S.C. § 1252(f)(1), which states that "no court (other than the Supreme Court) shall have the jurisdiction or authority to enjoin or restrain . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." Respondents reserve their right to move to sever the petition. *See Acord*, 2017 WL 4699835, at *1; s*ee also Buriev v. Warden, Geo, Broward Transitional Ctr.*, No. 25-cv-60459, 2025 WL 1906626, *1 (S.D. Fla. Mar. 18, 2025) (denying motion for joinder of two habeas petitions); *Rubinstein v. United States*, No. 23-cv-12685, 2024 WL 37931, *3 (E.D. Mich. Jan. 3, 2024) (finding misjoinder of multiple parties in a single habeas petition).

than to obtain a preliminary adjudication on the merits. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). "A preliminary injunction can take two forms." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009). "A prohibitory injunction prohibits a party from taking action and 'preserves the status quo pending a determination of the action on the merits.'" *Id.* (internal quotation omitted). "A mandatory injunction orders a responsible party to take action," as Petitioners seek here. *Id.* at 879 (internal quotation omitted). "A mandatory injunction goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored." *Id.* "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Id.* Where plaintiffs seek a mandatory injunction, "courts should be extremely cautious." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (internal quotation omitted). The moving party "must establish that the law and facts *clearly favor* [their] position, not simply that [they are] likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis original). Courts have also denied preliminary relief where the relief the plaintiffs seek is the same relief sought on the merits, because "[j]udgment on the merits in the guise of preliminary relief is a highly inappropriate result." *Mendez v. ICE*, No. 23-cv-00829-TLT, 2023 WL 2604585, at *3 (N.D. Cal. Mar. 15, 2023) (quoting *Senate of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992)).

**B.    Petitioners Cannot Show a Likelihood of Success on the Merits**

**1.    Under the Plain Text of 8 U.S.C. § 1225, Petitioners Must Be Detained Pending the Outcome of Their Removal Proceeding**

Petitioners cannot show a likelihood of success on their claims that they are entitled to a custody hearing prior to re-detention. This is because Petitioners are "applicants for admission" due to their presence in the U.S. without having been either "admitted or paroled." *See* Cruz Decl., Plummer Decl., Exhs. 1, 3, 5, and 7 at 1. Such aliens are subject to the mandatory detention framework of 8 U.S.C. § 1225(b) that specifically applies to them, not the general provisions of § 1226(a).

Indeed, Petitioners fall within the scope of the 2004 expedited removal designation that was in place at the time of their arrival (in addition to the more recent 2025 designation that expands enforcement to the full scope of the statute). *See* 69 Fed. Reg. at 48879. Because they were apprehended by CBP officers within 14 days of their entry and within 100 miles of the border, Petitioners indisputably falls squarely within both

the statutory and regulatory definition of an applicant for admission subject to expedited removal proceedings. *See* Exhs. 1, 3, 5, and 7, Cruz Decl., Plummer Decl.

Recent BIA authority confirms that Petitioners are subject to expedited removal and mandatory detention under § 1225(b). In *Matter of Yajure Hurtado*, 29 I.&N. Dec. 216 (BIA 2025), the BIA held that, based on the plain text of the statute, an alien who entered without inspection remains an "applicant for admission" who is "seeking admission," and is therefore subject to mandatory detention without a bond hearing, even if that alien has been present in the U.S. for years. *Id.*, slip op. at 220. Thus, the BIA also held that IJs lack authority to hold bond hearings for aliens in such circumstances. *Id.* The BIA considered, and rejected, the individual's argument that the government's "'longstanding practice' of treating aliens who are present in the United States without inspection as detained under [] 8 U.S.C.A. § 1226(a), and therefore eligible for a bond." *Id.* at 225. Citing the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the BIA explained that such a practice could be relevant where the statute is "doubtful and ambiguous," but here, "the statutory text of the INA . . . is instead clear and explicit in requiring mandatory detention of all aliens who are applicants for admission, without regard to how many years the alien has been residing in the United States without lawful status." *Hurtado*, slip op. at 226. Nor did it matter that "DHS [had] issued an arrest warrant in conjunction with the Notice to Appear and a Notice of Custody Determination": "the mere issuance of an arrest warrant does not endow an [IJ] with authority to set bond for an alien who falls under section 235(b)(2)(A) of the INA . . . If it did, it would render meaningless the many prohibitions cited above on the authority of an [IJ] to set bond." *Id.* at 227 (citing, *e.g.*, *Matter of Q. Li*, 29 I&N Dec. 66, 69 (BIA 2025)). The BIA has therefore now confirmed, in a decision binding on IJs nationwide, what the government is arguing here: individuals such as Petitioners are "applicants for admission" subject to mandatory detention under § 1225(b) and have no right to a bond hearing.

Respondents recognize that recent district court preliminary injunction decisions have concluded that § 1225(b) is not applicable to aliens who were conditionally released in the past under § 1226(a).[6] But these

---

[6] *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Jimenez Garcia v. Kaiser*, No. 4:25-cv-06916-YGR (N.D. Cal. Aug. 29, 2025); *Hernandez Nieves v. Kaiser*, No. 25-CV-06921-LB, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025).

1    non-binding decisions do not grapple with the textual argument that the BIA just held was "clear and

2    explicit." *Hurtado*, slip op. at 226.

3         Taken together, the plain language of §§ 1225(a) and 1225(b) indicate that applicants for admission,

4    including those "present" in the U.S.—like Petitioners—are subject to mandatory detention under Section

5    1225(b). When there is "an irreconcilable conflict in two legal provisions," then "the specific governs over

6    the general." *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1015 (9th Cir. 2017). While § 1226(a)

7    applies generally to aliens who are "arrested and detained pending a decision on" removal, § 1225 applies

8    more narrowly to "applicants for admission"—*i.e.*, aliens present in the U.S. who have not been admitted.

9    Because Petitioner falls within this latter category, the specific detention authority under § 1225 controls over

10   the general authority found at § 1226(a).

11        As alien PWAP subject to mandatory detention under § 1225(b), Petitioners are not entitled to

12   custody redetermination hearings at any time, whether pre- or post-detention. *Jennings*, 583 U.S. at 297

13   ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."); *Matter of*

14   *Yajure Hurtado*, I&N Dec. at 229 (holding that immigration judge "lacked authority to hear the

15   respondent's request for a bond as the respondent is an applicant for admission and is subject to

16   mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A)"). In addition,

17   although DHS initially elected to place Petitioners in full removal proceedings under § 1229a, Petitioners

18   remain PWAP aliens who are amenable to expedited removal and subject to mandatory detention due to their

19   presence in the U.S. without having been either "admitted or paroled" or physically present in the U.S.

20   continuously for the two-year period immediately preceding the date of the determination of inadmissibility.

21        If the immigration court grants DHS's motions to dismiss their full removal proceedings, their re-

22   detention will remain mandatory, but the detention authority will shift to § 1225(b)(1). Petitioners will

23   receive the expedited removal procedures under 8 U.S.C. § 1252(e)(2) and, as is the case under § 1225(b)(2),

24   cannot challenge their mandatory detention. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the

25   procedures under this clause shall be detained pending a final determination of credible fear of persecution

26   and, if found not to have such a fear, until removed."). However, as noted above, if an asylum officer or

27   immigration judge finds a credible fear of persecution or torture for any petitioner, that petitioner may be

28

RESPONDENTS' OPPOSITION TO PI MOTION
3:25-CV-06920-JD

placed in full removal proceedings under 8 U.S.C. § 1229a, *see* 8 C.F.R. § 208.30(f), although they will still remain subject to mandatory detention under § 1225(b)(2)(A).

### 2. A Narrow Interpretation of "Seeking Admission" Runs Counter to Congress's Use of the Phrase "Or Otherwise" in § 1225(a)(3)

Numerous courts in this district have dismissed the government's construction of § 1225(b), but none of these courts has considered the significance of Congress's use of "or otherwise" language in § 1225(a)(3) when interpreting § 1225(b)(2). While these courts have narrowly construed the "seeking admission" language in § 1225(b)(2), *see, e.g.*, *Salcedo Aceros*, 2025 WL 2637503 at *10, their textual analysis has not squared their conclusion with the one provision elsewhere in § 1225 where Congress expressly explained the relationship between "seeking admission" and "applicants for admission"—that is, § 1225(a)(3). The government posits that the starting point for understanding what "seeking admission" in § 1225(b) means is the language of § 1225(a)(3).

In § 1225(a)(3), Congress provided:

> All aliens (including alien crewmen) who are applicants for admission *or otherwise seeking admission or readmission to or transit through the United States* shall be inspected by immigration officers.

8 U.S.C. § 1225(a)(3) (emphasis added). This use of "or otherwise" to connect terms is a familiar legal construction where the specific items that precede that phrase are meant to be subsumed by what comes after it. *See, e.g.*, *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963-64 (11th Cir. 2016) (*en banc*) (noting four Congressional statutes and three 11th Circuit procedural rules as exemplary of how the phrase "or otherwise" is to be construed such that "the first action is a subset of the second action"); *cf. Patrick's Payroll Servs., Inc. v. Comm'r of Internal Revenue*, 848 F. App'x 181, 183-84 (6th Cir. 2021) (interpreting the "plain meaning and ordinary usage of the phrase 'or did not otherwise'" to mean that what immediately preceded the phrase was "one of the most common examples" of what followed it). As such, "or otherwise" operates as a catch-all category that serves to make clear that what precedes that phrase falls within the larger category that follows. *See Kleber v. CareFusion Corp.*, 914 F.3d 480, 482-83 (7th Cir. 2019) (analyzing the "or otherwise" phrase in a Congressional statute and determining that Congress's "word choice is significant" in that it "employ[s] a catchall formulation"); *see also* A*l Otro Lado v. Executive Office for Immigration Review*, 138 F.4th 1102, 1119 (2025) (finding that in 8 U.S.C. §§ 1225(a)(2) and (a)(3) "Congress took care to provide for

1  the inspection of both the *catch-all category of noncitizens 'otherwise seeking admission'* and stowaways")

2  (emphasis added).[7] The catch-all formulation does not render the phrase preceding "or otherwise" as

3  superfluous since "the specific items that precede it *are meant* to be subsumed by what comes after the 'or

4  otherwise.'" *Villarreal*, 839 F.3d at 964 (emphasis in original) (citing *Begay v. United States*, 553 U.S. 137,

5  153 (2008) (Scalia, J., concurring) ("[T]he canon against surplusage has substantially less force when it comes

6  to interpreting a broad residual clause...."))). To treat what follows "or otherwise" and what precedes it "as

7  separate categories, does not give effect to every word because it reads 'otherwise' out of the statute."

8  *Villarreal*, 839 F.3d at 964. To that end, Congress's use of "otherwise" immediately after "or" is textually

9  significant since using the disjunctive word "or" by itself would have suggested a different interpretation

10  "indicat[ing] alternatives and requir[ing] that those alternatives be treated separately." *Id.*

11  The import of these statutory construction rules is meaningful as applied to § 1225. First, given

12  Congress's use of "or otherwise" instead of "or," "applicant for admission" and "seeking admission" are not

13  separate requirements, as previously held by the Court. Order at 16. Second, based on the plain language of §

14  1225(a)(3), an "applicant for admission" is a subset of the larger category of aliens that are "seeking

15  admission or readmission to or transit through the United States." This interpretation necessarily flows from

16  two word choices made by Congress: (1) its use of the word "or" to disjunctively join "admission,"

17  "readmission" and "transit" as modifiers of the word "seeking" to create a broad catch-all category and (2) its

18  use of "or otherwise" to define the relationship between the phrase "applicant for admission" that precedes it

19  and the phrase "seeking admission or readmission to or transit through the United States" that follows it.

20  Third, by so choosing its words, Congress did not describe "seeking admission" as a narrow subset of

21  "applicants for admission." On the contrary, since "applicant for admission" is a subset of the larger category

22  of "seeking admission or readmission to or transit through the United States," 8 U.S.C. § 1225(a)(3), the plain

23  language of § 1225(b)(2) indicates only that, "in the case of an applicant for admission," Congress did not

24  extend that subsection's detention authority to individuals "seeking readmission" and "seeking transit

25

26  [7] *Fischer v. United States*, 603 U.S. 480 (2024), which addressed the import of "otherwise" on the preceding subsection's list of criminal violations, does not change the calculus. The Court did not consider—as here—the use of "or otherwise" connecting two surrounding phrases and, in any event, found—in a situation unlike here—that a list of "many specific examples of prohibited actions" in a prior subsection merely defined the scope of the following "residual clause" to "give it more definite meaning." *Id.* at 489-91.

through." It does not follow, however, that the remaining phrase "seeking admission" was meant to be narrower than "applicant for admission"—a point confirmed by the Ninth Circuit in its recent *en banc* decision in *Al Otro Lado*.

In *Al Otro Lado*, the Ninth Circuit compared the "applicant for admission" provision in § 1225(a)(1), which deems an "applicant for admission" to be "[a]n alien present in the United States who has not been admitted or who arrives in the United States," with the INA's asylum provision in 8 U.S.C. § 1158(a)(1), which utilizes similar language providing that an "[a]ny alien who is physically present in the United States or who arrives in the United States . . . may apply for asylum." 138 F.4th at 1118-19. The Ninth Circuit did not find that "seeking admission" is a subset of "applicants for admission." Instead, the Ninth Circuit found that "seeking admission" is at least as broad as "applicant for admission." *Id.* at 1119 (concluding that "§ 1225(a)(1) is *solely* about people *seeking admission* to the country") (emphasis added). This finding is consistent with the fact that the INA provides other instances of individuals who are seeking admission but who do not fulfill the criteria for an "applicant for admission" since they are either not present in the United States or admitted. *See, e.g.*, *Ogbolumani v. U.S. Citizenship & Immigr. Servs.*, 523 F. Supp. 2d 864, 869 (N.D. Ill. 2007) (describing visa applicant *at an American Embassy or Consulate abroad* as seeking admission); *Matter of Lemus-Losa*, 25 I&N Dec. 734, 741 (BIA 2012) (an alien "can 'seek admission' from anywhere in the world, for 'example by applying for a visa at a consulate abroad"); *see also* 8 U.S.C. § 1101(a)(13)(ii), (iv) (noting two circumstances where an alien *lawfully admitted* for permanent residence can be regarded as "seeking an admission").

### 3.    "Seeking Admission" Is Not Limited to Aliens Who Take Action Toward Admission

At least one court in this district has found that "applicant for admission" is broader than "seeking admission" because it covers "someone who is not 'admitted' but is not *necessarily* 'seeking admission.'" *See Salcedo Aceros*, 2025 WL 2637503 at *11 (emphasis in original). As the argument goes, § 1225(b)(2) covers only a smaller set of aliens "actively seeking admission." But "seeking admission" is not a subcategory of "applicants for admission" referring only to aliens necessarily taking steps toward actual admission.

"Seeking admission" is a term of art. *Matter of Lemus-Losa*, 25 I&N at 743 n.6 (BIA 2012). The INA provides that "many people who are not actually requesting permission to enter the United States in the

ordinary sense [including aliens present who have not been admitted] are nevertheless deemed to be 'seeking admission' under immigration laws." *Id.* at 743; *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 221 (BIA 2025); *see also Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2015). The INA provides numerous examples of Congress using "seeks admission" to mean something more expansive than seeking an actual admission. *See, e.g.*, 8 U.S.C. § 1182(a)(9)(A) (an alien previously ordered removed and "who again seeks admission within 5 years" is inadmissible); 8 U.S.C. § 1182(a)(9)(B) (an alien unlawfully present for more than 180 days but less than a year who voluntarily departed and "again seeks admission within 3 years" is inadmissible). These latter two groups of aliens accrued past periods of "unlawful presence" in the United States and thus were deemed "applicants for admission" under § 1225(a)(1), but they were also "in a very meaningful (if sometimes artificial) sense, 'again seek[ing] admission.'" *Matter of Lemus-Losa*, 25 I&N at 743 n.6. Accordingly, Congress's use of "seeking admission" in § 1225(b)(2) did not mean to include only aliens who are "actually" or "necessarily" seeking admission.

### 4.    To Apply § 1225(b)(2) Narrowly to "Arriving Aliens" Runs Counter to Congress's Specific Use of "Arriving Aliens" Elsewhere in § 122

At least one court in this district has also concluded that "seeking admission" in § 1225(b)(2) applies narrowly to "arriving aliens." *See Salcedo Aceros*, 2025 WL 2637503 at *10, 11. And similarly, Petitioners' counsel in this district have referred to § 1225(b)(2) as an "arriving alien statute." *See Salcedo Aceros v. Kaiser, et al.*, Case 3:25-cv-06924-EMC, ECF No. 24 (September 4, 2025 Hearing Tr.) at 14:10, 23:4-5, 25:1-2. But "where Congress knows how to say something but chooses not to, its silence is controlling." *In re Griffith*, 206 F.3d 1389, 1394 (11th Cir. 2000) (holding that "Congress must have consciously chosen not to include the language 'or the payment thereof'" in one statutory section when it specifically chose to use that language in a different section); *see also BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994) ("'[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another...'"). Congress knew how to use the word "arriving" and, to that end, twice included that word elsewhere in the *same* statutory section, both in the text and title of § 1225's expedited removal provision. *See* 8 U.S.C. § 1225(b)(1) ("Inspection of aliens *arriving* in the United States and certain other aliens who have not been admitted or paroled") (emphasis added); 8 U.S.C. § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien . . . who is *arriving* in the United States. .

RESPONDENTS' OPPOSITION TO PI MOTION
3:25-CV-06920-JD

.") (emphasis added). Congress's decision not to use "arriving"—or any variant thereof—in § 1225(b)(2) was purposeful, and that word cannot now be read into that provision to unnecessarily limit Congress' express language. Accordingly, § 1225(b)(2) is not limited to aliens arriving at the border; it also covers aliens in the country's interior who are present and not admitted. *See, e.g.*, *Pena v. Hyde*, No. CV 25-11983-NMG, 2025 WL 2108913, *1-3 (D. Mass. July 28, 2025) (holding that an alien living in the country and later detained after a traffic stop "remains an applicant for admission" and "his continued detention is therefore authorized by § 1225(b)(2)(A)" consistent with constitutional due process); *Sixtos Chavez, et al. v. Kristi Noem, et al.*, No. 3:25-cv-02325-CAB-SBC (S.D. Cal. Sep. 24, 2025), ECF No. 8 (denying application for temporary restraining order and rejecting petitioners' argument that their detention was governed by § 1226, finding instead that they were subject to mandatory detention under the plain text of § 1225(b)(2)).

### 5.    The INA's Implementing Regulations Are Contrary to the Court's Narrow View That § 1225(b)(2) Applies Only to Arriving Aliens

At least one court in this district has relied upon "the implementing regulation for § 1225(b)(2)" to bolster its conclusion that this statutory section "has limited application" and applies only to an "arriving aliens" subset of applicants for admission. *Salcedo Aceros*, 2025 WL 2637503 at *10 ("8 C.F.R. § 235.3 describes Section 1225(b)(2) as applying to 'any *arriving alien* who appears to the inspecting officer to be inadmissible.") (emphasis in original). However, this regulation does not support that narrow construction. It provides that the expedited removal provision of § 1225(b)(1) applies to "arriving aliens," 8 C.F.R. § 235.3(b)(1)(i), and that an arriving alien can be put into regular removal proceedings, 8 C.F.R. § 235.3(c)(1). But most significantly, the regulations expressly provide that § 1225(b)(2) is *not* limited to arriving aliens:

> An alien who was not inspected and *admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2–year period immediately prior to the date of determination of inadmissibility* shall be detained in accordance with section 235(b)(2) of the Act for a proceeding under section 240 of the Act.

8 C.F.R. § 235.3(b)(1)(ii) (emphasis added). This implementing regulation—applying § 1225(b)(2) to aliens able to establish their presence in the United States for two consecutive years—undermines the narrow interpretation that § 1225(b)(2) is limited to aliens arriving at the border.

### 6.    The *Mathews* Factors Do Not Apply

Given their status as applicants for admission subject to mandatory detention, Petitioners' reliance on

1  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) is misplaced. As an initial matter, the Supreme Court has

2  upheld mandatory civil immigration detention without utilizing the multi-factor "balancing test" of *Mathews*.

3  *See Demore v. Kim*, 538 U.S. 510 (2003) (upholding mandatory detention under 8 U.S.C. § 1226(c)); *cf.*

4  *Zadvydas v. Davis*, 533 U.S. 678 (2001) (upholding mandatory detention under 8 U.S.C. § 1231(a)(6) for six

5  months after the 90-day removal period).[8]

6      In any event, applicants for admission like Petitioners, who were not admitted or paroled into the

7  country, lack a liberty interest in *additional* procedures including a custody redetermination or pre-detention

8  bond hearing. Their conditional parole status does not provide them with additional rights above and beyond

9  the specific process already provided by Congress in § 1225. *See Thuraissigiam*, 591 U.S. at 139 ("aliens

10  who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are

11  'treated' for due process purposes 'as if stopped at the border'"); *Ma v. Barber*, 357 U.S. 185, 190 (1958)

12  (concluding that the parole of an alien released into the country while admissibility decision was pending did

13  not alter her legal status); *Pena* , 2025 WL 2108913 at *2 (finding that mandatory detention under §

14  1225(b)(2)(A) of an alien arrested at a traffic stop in the interior of the United States "comports with due

15  process"). Indeed, for "applicants for admission" who are amenable to § 1225(b)(1)—*i.e.*, because they were

16  not physically present for at least two years on the date of inspection, 8 U.S.C. § 1225(b)(1)(A)(iii)(II)—

17  "[w]hatever the procedure authorized by Congress . . . is due process," whether or not they are apprehended

18  at the border or after entering the country. *Thuraissigiam*, 591 U.S. at 138–139 ("This rule would be

19  meaningless if it became inoperative as soon as an arriving alien set foot on U.S. soil."). These aliens have

20  "only those rights regarding admission that Congress has provided by statute." *Id.* at 140; *see Dave v.*

21  *Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004). Petitioner is entitled only to the protections set forth by statute,

22  and "the Due Process Clause provides nothing more." *Thuraissigiam*, 591 U.S. at 140.[9]

23

---

24  [8] As the Ninth Circuit recognized in *Rodriguez Diaz*, "the Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th

25  1206 (9th Cir. 2022) (citations omitted). Whether the *Mathews* test applies in this context is an open question in the Ninth Circuit. *See Rodriguez Diaz*, 53 F.4th at 1207 (applying *Mathews* factors to uphold constitutionality of Section 1226(a) procedures in a

26  prolonged detention context; "we assume without deciding that *Mathews* applies here").

   [9] Courts in this district frequently cite to *Morrisey v. Brewer*, 408 U.S. 471 (1972), in support of their conclusion

27  that aliens in similar circumstances to Petitioners are entitled to a pre-deprivation hearing. While the Supreme Court did find that post-arrest process should be afforded to the parolee in that case, the government respectfully submits that the framework

28  for determining process for parolees is different from that for aliens illegally present in the United States.

RESPONDENTS' OPPOSITION TO PI MOTION
3:25-CV-06920-JD

### 7. Congress Did Not Intend to Treat Individuals Who Unlawfully Enter the Country Better than Those Who Appear at a Port of Entry

When the plain text of a statute is clear, "that meaning is controlling" and courts "need not examine legislative history." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 848 (9th Cir. 2011). But to the extent legislative history is relevant here, nothing "refutes the plain language" of § 1225. *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011). Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 to correct "an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc). It "intended to replace certain aspects of the [then] current 'entry doctrine,' under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry." *Id.* (quoting H.R. Rep. 104-469, pt. 1, at 225). For that reason, Petitioners—who entered the United States without inspection, miles from the nearest port of entry, and were processed and released outside of a port of entry—should be treated no differently than noncitizens who present at a port of entry and are subject to mandatory detention under § 1225, including pending further consideration of their applications for asylum. *See* 8 U.S.C. § 1225(b)(1)(B)(ii). To hold that these individuals are entitled to additional process would create the perverse incentive for aliens to enter the country unlawfully—or surreptitiously get access to the country's interior—rather than enter at a lawful location. *See Thuraissigiam*, 591 U.S. at 140

### 8. Petitioners' Detention Authority Cannot Be Converted to § 1226(a)

As "applicants for admission," Petitioners' detention is governed by the § 1225(b) framework. This remains true even where the government previously released them under 8 U.S.C. § 1226(a). By citing § 1226(a), DHS does not permanently alter an alien's status as an "applicant for admission" under § 1225; to the contrary, the alien's release is expressly subject to an order to appear for removal proceedings based on *unlawful* entry. Nor is DHS prevented from clarifying the detention authority to conform to the requirements of the statutory framework as DHS now interprets it. *See, e.g.*, *United Gas Improvement v. Callery*, 382 U.S. 223, 229 (1965) (explaining that an agency can correct its own error). Pursuant to the statutory framework, an alien's conditional release is not the type of "lawful entry into this country" that is necessary to "establish[

1  ] connections" that could form a liberty interest requiring additional process, and he or she remains an

2  "applicant for admission" who is "at the threshold of initial entry" and subject to mandatory detention under

3  § 1225. *Thuraissigiam*, 591 U.S. at 106–07 ("While aliens who have established connections in this country

4  have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set

5  the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of

6  initial entry cannot claim any greater rights under the Due Process Clause.")

7          This binding Supreme Court authority is therefore in conflict with recent district court decisions

8  finding that the government's "election to place Petitioner in full removal proceedings under § 1229a and

9  releasing Petitioner under § 1226(a) provided Petitioner a liberty interest that is protected by the Due Process

10 Clause." *Ramirez Clavijo*, 2025 WL 2419263, *3. The government's decision to place an alien like

11 Petitioners in full removal proceedings under § 1229a is consistent with § 1225(b)(2), and its decision to cite

12 § 1226(a) in releasing them does not render their entry lawful; it remains unlawful (as the alien's release is

13 conditioned on appearing for removal proceedings based on *unlawful* entry), and as the Supreme Court

14 confirmed in *Thuraissigiam*, the alien remains "on the threshold of initial entry," is "treated for due process

15 purposes as if stopped at the border," and "cannot claim any greater rights under the Due Process Clause"

16 than what Congress provided in § 1225. *Thuraissigiam*, 591 U.S. at 139–40; *see also Pena*, 2025 WL

17 2108913 at *2 ("Based upon the inherent authority of the United States to expel aliens, however, applicants

18 for admission are entitled only to those rights and protections Congress set forth by statute.").

19         The Supreme Court's holding in *Thuraissigiam* is consistent with its earlier holding in *Landon*,

20 where the Court observed that only "once an alien gains admission to our country and begins to develop the

21 ties that go with permanent residence [does] his constitutional status change[]." 459 U.S. at 32. In

22 *Thuraissigiam*, the Court reiterated that "established connections" contemplate "an alien's lawful entry into

23 this country." 591 U.S. at 106–07. Here, Petitioners were neither admitted nor paroled, nor lawfully present

24 in this country as required by *Landon* and *Thuraissigiam* to claim due process rights beyond what § 1225(b)

25 provides. They instead remain applicants for admission who—even if released into the country "for years

26 pending removal"—continue to be "'treated' for due process purposes 'as if stopped at the border.'"

27 *Thuraissigiam*, 591 U.S. at 139–140 (such aliens remain "on the threshold" of initial entry).

28

RESPONDENTS' OPPOSITION TO PI MOTION
3:25-CV-06920-JD

1       **9.     Petitioners Are Not Entitled to a Pre-Detention Hearing Under § 1226(a)**

2       Even if this Court finds that § 1226(a) applies here, Petitioners would still not be entitled to a pre-

3 detention hearing. For aliens detained under § 1226(a), "an ICE officer makes the initial custody

4 determination" *post*-detention, which the alien can later request to have reviewed by an IJ. *Rodriguez Diaz*,

5 53 F.4th at 1196. The Supreme Court has long upheld the constitutionality of the basic process of

6 immigration detention. *Reno v. Flores*, 507 U.S. 292, 309 (1993) (rejecting procedural due process claim that

7 "the INS procedures are faulty because they do not provide for automatic review by an immigration judge of

8 the initial deportability and custody determinations"); *Abel v. United States*, 362 U.S. 217, 233–34 (1960)

9 (noting the "impressive historical evidence of acceptance of the validity of statutes providing for

10 administrative deportation arrest from almost the beginning of the Nation"); *Carlson v. Landon*, 342 U.S.

11 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure."); *Wong Wing v. United

12 States,* 163 U.S. 228, 235 (1896) ("We think it clear that detention or temporary confinement, as part of the

13 means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid.").

14 Thus, under Section 1226(a), aliens are not guaranteed *pre*-detention review and may instead only seek

15 review of their detention by an ICE official once they are in custody—a process that the Ninth Circuit has

16 found constitutionally sufficient in the prolonged-detention context. *Rodriguez Diaz*, 53 F.4th at 1196–97.[10]

17       **10.     Petitioners Cannot Obtain an Injunction Prohibiting Transfer**

18       To the extent that Petitioners seek an injunction that prohibits transferring them out of this District,

19 they cannot succeed. The AG has discretion to determine the appropriate place of detention. *Milan-

20 Rodriguez v. Sessions*, No. 16-cv-01578-AWI, 2018 WL 400317, *10 (E.D. Cal. Jan. 12, 2018) (citing *Rios-

21 Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985)). And while the Court may review whether such discretion

22 resulted in a deprivation of rights, Petitioners have not shown how their mandatory detention or any transfer

23 would interfere with their ability to present their cases or access counsel any more than any other similarly

24 situated detainee. *See Milan-Rodriguez*, 2018 WL 400317, *10.

25

26       [10] Although *Rodriguez Diaz* did not arise in the pre-detention context, the Ninth Circuit noted that the
petition argued that the Section 1226(a) framework was unlawful "'for any length of detention'" and

27 concluded that the challenge to Section 1226(a) failed "whether construed as facial or as-applied challenges
to § 1226(a)." *Rodriguez Diaz*, 53 F.4th at 1203.

28

1

## C.     Petitioners Cannot Establish Irreparable Harm

2          Petitioners do not establish that they will be irreparably harmed absent a PI. The "unlawful

3   deprivation of physical liberty" is a harm that "is essentially inherent in detention," and thus "the Court

4   cannot weigh this strongly in favor of" Petitioner. *Lopez Reyes v. Bonnar*, No 18-cv-07429-SK, 2018 WL

5   7474861 at *10 (N.D. Cal. Dec. 24, 2018). It is also countervailed by authority mandating—and

6   upholding—their categorical detention as lawful. Indeed, the alleged infringement of constitutional rights is

7   insufficient where, as here, they fail to demonstrate "'a sufficient likelihood of success on the merits of [their]

8   constitutional claims to warrant the grant of a preliminary injunction.'" *Marin All. For Med. Marijuana v.*

9   *Holder*, 866 F. Supp. 2d 1142, 1160 (N.D. Cal. 2011) (quoting *Assoc'd Gen. Contractors of Cal., Inc. v.*

10  *Coal for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991)); *Meneses v. Jennings*, No. 21-cv-07193-JD,

11  2021 WL 4804293, at *5 (N.D. Cal. Oct. 14, 2021) (denying TRO where petitioner "assume[d] a deprivation

12  to assert the resulting harm"). Further, any alleged harm from the detention alone is insufficient because

13  "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process."

14  *Demore*, 538 U.S. at 523; *see also Flores*, 507 U.S. at 306; *Carlson*, 342 U.S. at 538. And as noted by the

15  Ninth Circuit in *Rodriguez Diaz*, if treated as detention under § 1226(a), the risk of erroneous deprivation

16  and value of additional process is small due to the procedural safeguards that Section 1226(a) provides. Thus,

17  Petitioners cannot establish that their lawfully authorized mandatory detention would cause irreparable harm.

18         ## D.     The Balance of Equities and Public Interest Do Not Favor an Injunction

19         When the government is a party, the balance of equities and public interest merge. *Drakes Bay*

20  *Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435

21  (2009)). Further, where a moving party only raises "serious questions going to the merits," the balance

22  of hardships must "tip sharply" in his favor. *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35

23  (9th Cir. 2011) (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).

24         Here, the government has a compelling interest in the steady enforcement of its immigration laws.

25  *See Noem v. Vasquez  Perdomo*, 606 U.S. —, 2025 WL 2585637, at *4-5 (2025) (Kavanaugh, J., concurring)

26  (finding that balance of harms and equities tips in favor of the government in immigration enforcement given

27  the "myriad 'significant economic and social problems' caused by illegal immigration"); *Demore*, 538 U.S.

28

RESPONDENTS' OPPOSITION TO PI MOTION
3:25-CV-06920-JD

1   at 523; *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (holding that the court "should give

2   due weight to the serious consideration of the public interest" in enacted laws); *see also Ubiquity Press v.*

3   *Baran*, No 8:20-cv-01809-JLS-DFM, 2020 WL 8172983, at *4 (C.D. Cal. Dec. 20, 2020) ("the public

4   interest in the United States' enforcement of its immigration laws is high"); *United States v. Arango*, CV 09-

5   178 TUC DCB, 2015 WL 11120855, at 2 (D. Ariz. Jan. 7, 2015) ("the Government's interest in enforcing

6   immigration laws is enormous"). Indeed, the government "suffers a form of irreparable injury" "[a]ny time

7   [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland*

8   *v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J.) (citation omitted).

9          Petitioners' claimed harms cannot outweigh this public interest in the application of the law,

10  particularly since courts "should pay particular regard for the public consequences in employing the

11  extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citation

12  omitted). Recognizing the availability of an injunction under these circumstances would permit any

13  "applicant for admission" subject to § 1225(b) to obtain additional review simply because he or she was

14  released—even if that release is expressly conditioned on appearing at removal proceedings for *unlawful*

15  entry—circumventing the comprehensive statutory scheme that Congress enacted. That statutory scheme

16  —and judicial authority upholding it—likewise favors the government. While it is "always in the public

17  interest to protect constitutional rights," if, as here, petitioners have not shown a likelihood of success on

18  the merits of their claim, that public interest does not outweigh the competing public interest in

19  enforcement of existing laws. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The public

20  and governmental interest in applying the established procedures for "applicants for admission," including

21  their lawful, mandatory detention, *see* 8 U.S.C. § 1225(b); *Jennings*, 583 U.S. at 297, is significant.

22         **E.     Any Court Order Should Not Reverse the Burden of Proof**

23         At any bond hearing, Petitioners should have the burden of demonstrating that they are *not* a flight

24  risk or danger to the community. That is the ordinary standard applied in bond hearings. *Matter of Guerra*,

25  24 I&N Dec. 37, 40 (B.I.A. 2006) ("The burden is on the alien to show to the satisfaction of the [IJ] that he

26  or she merits release on bond."). It would be improper to reverse the burden of proof and place it on the

27  government in these circumstances. *See Rodriguez Diaz*, 53 F.4th at 1210-12 ("Nothing in this record

28

suggests that placing the burden of proof on the government was constitutionally necessary to minimize the risk of error, much less that such burden-shifting would be constitutionally necessary in all, most, or many cases.").

The Ninth Circuit previously held that the government bears the burden by clear and convincing evidence that an alien is not a flight risk or danger to the community for bond hearings in certain circumstances. *Singh v. Holder*, 638 F.3d 1196, 1203-05 (9th Cir. 2011) (bond hearing after allegedly prolonged detention). But following intervening Supreme Court decisions, the Ninth Circuit has explained that "*Singh's* holding about the appropriate procedures for those bond hearings . . . was expressly premised on the (now incorrect) assumption that these hearings were statutorily authorized." *Rodriguez Diaz*, 53 F.4th at 1196, 1200-01 (citing *Jennings*, 583 U.S. 281, and *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022)). Thus, the prior Ninth Circuit decisions imposing such a requirement are "no longer good law" on this issue, *Rodriguez Diaz*, 53 F.4th at 1196, and the Court should follow *Rodriguez Diaz* and the Supreme Court cases.

## V.     CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court decline to enter a preliminary injunction.

DATED:  September 30, 2025                    Respectfully submitted,

                                             CRAIG H. MISSAKIAN
                                             United States Attorney

                                             */s/ Cynthia Johnson*
                                             CYNTHIA JOHNSON
                                             Special Assistant United States Attorney

RESPONDENTS' OPPOSITION TO PI MOTION
3:25-CV-06920-JD